Okay, Mr. Johnson. May it please the court, my name is Steve Johnson and I represent the Wheeler v. Norfolk S Ry whose direct employer, Poultry Services, contracted with the railroad to perform essential and necessary railroad work. Feeler applies to those who are employed by the railroad, but the act doesn't define what the term to be employed means. Here in this case, James Wheeler, working with another Poultry employee, sustained serious injuries when they were working with the equipment used to rail trains that had become derailed. The district court didn't believe that Wheeler presented sufficient facts to get past some of the judgment on the employment status issue. And in the district court, and in here, what we primarily contend is that the contract between the railroad, Norfolk Southern, and to bring him under the ambit of Feeler in that the control that was exercised or potentially exercised over his employer was sufficient to provide a master-servant relationship as opposed to one of the independent contractors. Thus, the primary issue here on appeal, Your Honors, is what it means to be employed under Feeler. One of the guiding principles that the district court has in place is that if you're employed under Feeler, you have to have a master-servant relationship. If you're employed under Feeler, you have to have a master-servant relationship. And that's what we're trying to do here in this case, is to provide a master-servant relationship. We're trying to provide a master-servant relationship with Norfolk, and we're trying to provide a master-servant relationship with Feeler. So, I think that's one of the things that we're trying to do here in this case, is to provide a master-servant relationship with Norfolk, and we're trying to provide a master-servant relationship with Norfolk. The other thing that's in the master-servant relationship is whether the quote-unquote independent contractor is required to attend the railroad safety meetings, and that, in fact, was the case here. Would you consider Mr. Wheeler to be a special employee of the other 14 customers of Hulcher for which he worked before he worked at Norfolk? Well, Your Honor, I think that would depend on a lot of circumstances. Of course, the contracts with those other companies are not part of the record here, so we don't know if those contractual terms were in as depth or as detailed as the one here with Norfolk Southern, so I can't answer that question. Perhaps, but maybe not. And what evidence do you have of direct control of Mr. Wheeler's work besides the safety, training, and availability to evict? Well, just like in Lindsay v. Louisville and Nashville Railroad, which this Court affirmed a finding of employment status, there is very little direct evidence of active control over Mr. Wheeler's operations or his work. Mr. Wheeler did submit an affidavit where he said if a Norfolk employee had instructed him on something, he would abide by those instructions. So the record here, just like in Lindsay, is scant on actual instances of exerted control. However, we think the issue here in this case is primarily contractually based and sets up not so much a borrowed servant situation or an issue of direct control. Rather, we think the analysis might be better looked at from the perspective of a subservant of a servant issue, and we think that that relationship is set up based on the contract alone. Your Honors, there could be no dispute that the work that Halter was contracted to do was necessary work for the railroad. The railroad yardmaster testified that if Halter didn't perform the work, Norfolk Southern would have to perform the work. Clearly, a railroad like Norfolk Southern cannot conduct interstate commerce when it trains and its engines and the cars that it's hauling for customers are derailed. When a derailment occurs, Norfolk Southern calls Halter, and it expects Halter, pursuant to the contract, to show up 24-7 to rerail its cars, not only in its yard, but also on its tracks, and all that is set out in the agreement. We therefore contend that the contract alone sets up sufficient indicia of a master service agreement to set up not an independent contract relationship, but one of master servant. Counsel, how do you distinguish the Sixth Circuit's opinion in Campbell versus— Say again, Your Honor? How do you distinguish the Sixth Circuit Court of Appeals opinion in Campbell versus BNSF Railroad, where the court held that an agreement that did require the contractor to have background checks and go through certain safety protocols was not enough to make him an employee of the railroad for purposes of FELA? I would agree with Your Honor that, based on those terms, that that case most likely was properly decided if that's the only contractual elements that were at issue. The distinguishing points here in this case, Your Honor, is that Norfolk was the company that chose which equipment that would be used at the derailment sites. Norfolk had the ability under the contract to tell Holcher that you have to work with other contractors that we, Norfolk, choose. Additionally, Norfolk retained the power under the contract to tell Holcher that you have to work with our Norfolk employees, and they couldn't argue over that. If Holcher disagreed with that, they were obligated under the contract to continue to  And there are other instances of control, too. Norfolk didn't have the ability, I'm sorry, Holcher didn't have the ability to subcontract any of its work unless it first obtained written approval from Norfolk, which I think is kind of extraordinary, and probably more extraordinary is the fact that Holcher was required, pursuant to the contract, to provide Norfolk with a yearly maintenance audit of Holcher's own equipment. In other words, pursuant to this contract, Holcher had to assure to Norfolk that it was providing maintenance on its own equipment. In addition to that, even more intrusive, I believe, is Norfolk retained the ability under the contract to audit Holcher's financial records. They retained the right to audit the records with regard to the equipment used, the material used, the manpower used, and Norfolk even required that Holcher provide it with the social security numbers of its employees. That seems really intrusive to me and goes beyond any scope of an independent contractor relationship. Isn't the purpose of that to make sure that Holcher is not ripping off or defrauding Norfolk? Well, I'm sure that's one of the purposes, Your Honor, to make sure it's not being scammed by Holcher, and that's certainly something that they're able to do, but likewise, the methods in which they're reserved under the contract I think are overly intrusive, and they probably could have done that by other means. If Norfolk Southern didn't like the way Holcher was performing, working with the contract, or if they thought they were being overcharged, well, certainly they had the ability to terminate the contract. Is the best authority for your position the California State Court decision in Collins versus Union Pacific? Say again, Your Honor, I'm sorry. Is the best authority the most on point authority for your position, the California Collins case? We believe Collins is helpful because it's the most analogous case that we can find, and obviously it involves Holcher, so we thought that was a good point in that case, but again, in that case, I think the lower California court relied to some extent, actually to a large extent on the contractual terms, which I believe, although it's not in the record, the contract was probably identical to the one we have here, so I like that case because it's analogous, but I think there's other authority. I think that is helpful. There's a Seventh Circuit case that I don't think is cited in our briefs, Schroeder versus Pennsylvania Railroad, where it's actually a pre-Kelly case, but I believe the Supreme Court ruled Schroeder approvingly, it's a 1970 case, wherein the court there relied in large part on contractual terms to sustain a jury verdict of master-servant relationship between a contract worker and the railroad in that case, so Schroeder is a good case as well. Kelly and Lindsey are a good authority for us because they both set out broad principles on which courts should use to determine whether there's a master-servant relationship, so we believe that under the broad principles set out by the Supreme Court in Kelly versus Southern Pacific Railroad and this court in Lindsey versus Louisville and Nashville Railroad are also good authority as well. One of the guiding principles that the Supreme Court has, I think, repeatedly stated that the spirit intent of FELA is to bring within its coverage those who are doing railroad work and that is something acknowledged by the U.S. Supreme Court in Sinkler versus Missouri and Pacific Railroad even before Kelly and in that case, the Supreme Court clearly said and inferred that those who are doing railroad work should come under FELA's coverage and the railroads as a result of that should bear the burden of injuries to workers. In Lindsey, the issue of employment status went to the jury on very little evidence but this court sustained a jury verdict and there was little if no evidence of direct control over the employee. There was some finger-pointing where the railroad employees would tell the contract employees which cars they needed to unload and surely here in this case, we have finger-pointing. The testimony from the Northwark Southern employees is that when Halter would come to the yard, they would tell Halter where they would have to enter the yard if that was an issue. Halter would have to work with the mechanical department so certainly there were some instructions and guidance from Northwark's mechanical department on the work that needed to be performed. That seems no different than the sort of instructions that were given in Lindsey. Another guiding principle set out by the Supreme Court is determination of employment status under FELA is usually a question for the jury. We think here that sufficient facts were presented certainly with regards to some of the testimony and more particularly with regards to the contract that the jury should have been allowed to decide this issue with proper instructions and as referenced in our reply brief with which invalidates any contracts, the intent of which is to avoid liability. We think the jury with proper instructions could have inferred that the contractual provisions that label Halter as an independent contractor could have been put aside or disregarded. Thus, in closing, Your Honors, we believe that under the proper guidance of the Supreme Court in paper that this issue should have been properly left to the jury. Unless the Court has any additional questions, I can give up my last 20 seconds. Yes. You've saved time for rebuttal. Thank you. That's five minutes. Resolved? Good morning, Your Honors. Renee Smith-Ald for Norfolk Southern Railway Company. This case addresses the issue of whether the appellant, James Wheeler, can be considered an employee of Norfolk under the Federal Employer's Liability Act. Norfolk maintains that the district court's exhaustive 40-page ruling should be appealed because Wheeler has failed to provide sufficient evidence to demonstrate that Norfolk had any supervisory control at the time he was injured. Here, Wheeler was injured when he was rigging down the boom of Hushler's Caterpillar tractor as Hushler was in the process of packing up to leave the railroad site. No Norfolk employees were present in the area or had any sort of interest whatsoever of what Hushler was doing with its own equipment when it finished doing their job at the site and when they were leaving the site. As I understand it, they were told what equipment they were to bring to the job site. Is that right? That is correct, Your Honor. They were told what equipment . . . Why isn't that an indication of supervision? Why is that not an indication of supervision, telling people what tools they have to bring? Under the Williamson factors, Your Honor. Under Williamson, the Third Circuit held that the primary factor to be considered in determining whether a plaintiff was an employee by the defendant railroad is whether the railroad had the power to direct and supervise the plaintiff in the performance of his work at the time he was injured. Under Williamson, the courts looked to when the employee was hired, when he was paid, when he was terminated, who supplied the tools and the equipment, and the site of the work. All of these factors except the place of the work cut in favor of Norfolk. Specifically here, with regard to these factors, at the time of this incident, at all times, Wheeler was hired, paid, trained, and supervised by Wheeler. In fact, Wheeler had been at 14 other sites prior to him setting foot on the Norfolk Fork Rail Yard. Norfolk did not hire or engage William to perform any work. Wheeler, at the time, was being supervised by Jose Chavez, another Hushler employee, and essentially the accident occurred because Wheeler received instructions from another Hushler employee, Chris Davis. As to prong number three of Williamson, Norfolk did not have the authority to terminate Hushler's employment. As to number four, the consensus of all witnesses deposed was that Norfolk never provided Hushler with any tools or equipment for Hushler to use. Again, Hushler was in the process of disassembling their equipment at the time the incident occurred. Wheeler has failed to present any evidence to move the dial, as the district court put it, that Norfolk had any control or supervision over him. Instead, the evidence that Norfolk presented showed that Wheeler received information and instructions from a Hushler supervisor at the time of his injury, and he was instructed by Chris Davis, the operator of the Caterpillar. And Wheeler, again, introduced this evidence into the record, and that can be found on pages 708 through 711 of the record. Norfolk presented evidence that it does not exercise any control over its employees. Stacey Brown, Hushler's senior foreman, testified literally that when Hushler is working, I'm just hands off. That is found on page 638 of the record, page 19 of the deposition, line 10. Given that Norfolk takes a hands-off approach in supervising Hushler, the appellate cannot be considered an employee of Norfolk under FELA. And while the appellate has argued that the district court's ruling is improper because the question of whether Wheeler is an employee of Norfolk is a question for the jury, he is mistaken. The courts, including this court, have determined that whether a worker is a railroad employee under FELA should be left for the jury only and only when reasonable minds can reach different conclusions as to who was the employer. The appellate has also argued that the district court erred because it placed too much emphasis on Williamson. Wheeler contends the lower court didn't take into consideration the subtle exercise of control that Norfolk reserved per the contract. I would like to address a few of the factors that the court questioned Mr. Johnson about, specifically with regard to Collins. Of significance, the district court correctly determined in footnote 140 of its opinion that the case Collins has no precedential value here. No precedential value. Collins can be distinguished from this case. Collins is a California state court case. Unlike Collins, Norfolk did not supervise Hushler's work, particularly when Wheeler was injured. Norfolk does not instruct Hushler's employees how to perform any work. Norfolk gave Hushler much more autonomy at its New Orleans Railroad than that given by Union Pacific and Collins. Again, also, Norfolk did not exert—excuse me, let me go back on one thing. With regard to the instruction of Norfolk, Norfolk did not instruct Hushler's employees how to do anything, which I will get to. That's per the contract also. In Collins, a Union Pacific supervisor might give signals or directions to Hushler employees, directing them in the operation of Hushler equipment. Again, Stacey Brown said he's hands off. The yardmaster for Norfolk said that he doesn't even pay attention to anything that Hushler does. He doesn't even look at what Hushler does. Norfolk does not supervise, Norfolk does not provide Hushler with any instructions. And another factor under the Collins court looked at is Norfolk did not have exclusive control over the equipment used by Hushler. FELA cannot apply since Hushler and Norfolk played consulting roles in making the decisions. Norfolk never provided Hushler with any equipment or tools for Hushler to use. And unlike Collins, Norfolk did not control Hushler's entrance or exit to the railroad. Unlike Union Pacific and Collins, Norfolk did not control Hushler's ingress or egress at derailment sites. Both Hunter and Brown, the Norfolk employees who testified, clarified that Hushler would not have needed Norfolk's permission to enter the rail yard. And Brown says that on the record on page 638, page 17, lines 15 to 25. On July 1st, 2016, Norfolk and Hushler Services entered into a contract for Hushler to provide cleanup and repair services on an as-needed basis for Norfolk. The provisions of the contract are very similar to those entered into by Gulf Coast Railroad Group and the New Orleans Public Belt and Morris, where the Eastern District determined that summary judgment was appropriate because Morris could not be considered an employee of the New Orleans Public Belt Railroad under Weaver and Williamson. Importantly, section 19 of the contract, which can be found on page 103 of the record, clearly states that Hushler is an independent contractor of Norfolk. Under section 19, the contract states that all matters to be performed by Hushler shall be its own separate business under its own separate management, supervision, and direction. It also states that all employees of Hushler shall and remain sole employees of Hushler. Similarly, provision 17.2 of the contract, which can be found on page 102 of the record, address the areas of control and direction and state, Norfolk personnel shall remain under the direction and control of Norfolk and Hushler personnel shall remain under the direction and control of Hushler supervisors. These provisions of the contract address some of the aspects of Kelly. Under these provisions of the contract that are crystal clear under Civil Code Article 2046, when the provisions of a contract are clear and unambiguous, no further consideration of the party's intent should be made. Is re-railing derailed train cars part of the regular business of Norfolk? It is part of some of the regular business of Norfolk, but the courts have held just because a contractor provides some work that could be considered what a railroad does, does not make that employee or that contractor an employee under FELA. No one factor is determinative, correct? That is correct, and the court specifically said that, that the ancillary court, the Eastern District of Louisiana, determined that granted that only factor, for example, factor five of Williamson, that factor alone is not determinative. Does at least that one factor favor Wheeler's position? Does that one factor at least favor Wheeler's position, the fact that re-railing was a regular part of Norfolk's business? I apologize. Re-railing train cars was part of Norfolk's regular business, correct? It was part of Norfolk's regular business. So that one factor favors Mr. Wheeler here? That one factor favors Mr. Wheeler, but the courts have determined not one factor is determinative. Of course, they have to look at who hired, paid, and had the power to terminate and supply the tools. Also, the courts don't look to who reserved any theoretical control, but who had actual immediate control of the worker at the time he was injured. The Lindsay Court focuses on the test of whether a worker is an employee of the railroad is whether the railroad, through its employees, plays a significant supervisory role as to the work of the injured employee. The appellate discussed this morning that Mr. Wheeler should be considered an employee of Norfolk based upon the audits that Norfolk requires. The audits in and of themselves have no relationship to the test under Lindsay. Importantly, Wheeler has presented no evidence here that he received instructions or orders from a Norfolk employee on how to rig down the boom. He has not provided any evidence that he was supervised by a Norfolk employee when the accident occurred, or he has not presented any evidence that a Norfolk employee or Norfolk itself contributed to the accident in any way. It's important to note that the rerailment had been fully completed when Wheeler was injured. At the time, Norfolk had no interest in how Hutchler prepares to leave the rail yard. Wheeler's declaration did not present any evidence to the court that Norfolk had any direct control over him. Besides Wheeler's declaration, the testimony of Norfolk's yardmaster and general foreman showed that Norfolk had no supervisory direct or indirect control at the time he was injured or at any other time. Specifically, Preston Hunter, Norfolk's rail yardmaster, said he did not have any personal knowledge about the accident at all. He did not even know about the accident until shortly before he was deposed. Preston Hunter also said he does not supervise Hutchler or ever look at what they do. He says he never interacts with Hutchler and that he never instructs Hutchler in any way. Similarly, Stacy Brown, the senior general foreman, did not remember the derailment and he didn't know about the accident until shortly before the deposition. Despite Wheeler's declaration, Norfolk's yardmaster was not certain if he could stop a Hutchler employee from doing something unsafe. However, under Kelly v. Southern Pacific Company, the actions of stopping a worker from doing something that is unsafe is the type of global oversight that the law allows and not sufficient to establish control. Mr. Brown also testified in his deposition that, yes, he would tell a Hutchler employee to stop if they were doing something unsafe, but as Your Honor asked Mr. Johnson earlier today, if a trespasser was also doing something unsafe, he also would stop the trespasser from doing anything unsafe and that telling a Hutchler employee to stop doing something that was unsafe is no different from a trespasser. Could a jury find, this is Judge Barker, could a jury find that the skill required for Hutchler's occupation is also a skill that Norfolk possesses? A skill that he possesses? Again, I don't think that is so much, the law is the issue of whether an employee can be an employee under FELA is whether reasonable minds can reach different conclusions on the issue of who was the employer. Here Norfolk has presented a multitude of evidence showing that it had no supervisory control over Wheeler at the time the accident occurred. If everyone at, if all of the employees at Hutchler were sick or went on strike, could Norfolk re-rail trains? Yes, the contract allows Norfolk to hire someone else, hire another company to re-rail the trains. So that is not an issue at all. That's clear in the contract. Could Norfolk's own employees re-rail trains? They probably could. There is a mechanical department that they do have but they have chosen to get a labor group to re-rail the trains. In sum, Wheeler was supervised by a Hutchler employer, Jose Chavez. Wheeler has not presented any evidence that he was supervised by a Norfolk employee or that Norfolk had any control over him. Thank you, Your Honor. We request that the court uphold the district court's decision. Thank you. Thank you, Ms. Ault. Mr. Johnson, you've saved time for a vote. Just a few points, Your Honors. Judge Barker, to directly answer your question, yes, Norfolk could re-rail its own trains. In fact, it was either Preston Hunter or Stacey Brown who testified if Hutchler didn't do the work, they would do it. So clearly they have the ability to perform that type of work. Reference was made to two district court cases which I think were probably decided correctly. The first one was Anselette v. National Railroad Passenger Corporation. The reason I remember that case is the bug man case. That's the guy who worked for Red's Pest Control. In that case, the court found that the plaintiff was not an employee on the SELA because the railroad had contracted with Red's to perform pest control. There was testimony from the railroad employees, in contrast to our case, that the railroad didn't have the ability or the knowledge to perform pest control services, and maybe more importantly, pest control services in the state of Louisiana required a license which the railroad didn't have. The second case is Dominick's v. Illinois Central Railroad. I believe that's a Southern District of Mississippi case. The first one was Eastern District of Louisiana. Dominick's involved rail grinding, whatever that is. I'm not sure. But there was testimony in that case from the railroad that they didn't have the knowledge or the expertise to perform rail grinding work. In that case, the district court found that master-servant relationship did not exist. A reference was made to Mr. Wheeler's duration of employment at Norfolk's facility in New Orleans. Well, based on the theory that we think he should be an employee of Norfolk, that's the subservient-of-a-servant theory, the duration of employment should not be focused on Mr. Wheeler. Rather, the proper focus is on the duration of the relationship between Holcher and Norfolk. And we have plenty of testimony in this case that the relationship was longstanding. The contract here at issue was entered into on July 1, 2016. Stacey Brown, the human resources manager for Holcher, said that the relationship lasted way before that contract ever came into place, but he didn't know exactly how long. And tellingly, we think this point is really important. Stacey Brown testified that the Holcher employees were so familiar with the yard that they didn't need to tell them how or where to enter. In fact, Mr. Brown testified that the Holcher employees know the yard better than him, and I believe Brown testified he was a 16- to 18-year employee of the railroad. So clearly the relationship had gone on for a long time, and we think that's an important factor that the court should apply, whether it's the Williamson test or some other test. With regard to Williamson, the court there said when there's direct control, when there's evidence of direct control, that's the end of the game. That's all the plaintiff needs to prove. If the railroad exerted direct control, he's going to be considered employed on the FILA. It's only when there's a lack of evidence of direct control that these other factors are consulted here. We believe the evidence in this case by the testimony and maybe more importantly by the contracts sets up conflicts, disputed issues of fact as to whether there was a master-servant relationship, and that's precisely why under Baker v. Texas and Missouri Railroad that the jury should have been allowed to decide this issue. Thank you, Mr. Johnson. Your case is under submission.